E-FILED
Wednesday, 08 July, 2009  02:33:32 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 06-CR-20030** |
| | ) | |
| **ROBERT W. TAYLOR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

Defendant, Robert W. "Bear" Taylor, proceeding pro se with standby counsel William C. Zukosky of the Federal Defenders' Office, filed his Motion to Withdraw Guilty Plea and Vacate Plea Agreement (#50), Motion for Revocation or Amendment of Detention Order (#51), and Motion for Discovery (#52) on June 1, 2009. The government filed its Responses (#56-58) to all three of Defendant's motions on June 19, 2009. For the following reasons, all three of Defendant's motions are DENIED.

### BACKGROUND

The Indictment

Defendant was indicted on May 5, 2006, with two counts of wire fraud in violation of 18 U.S.C. § 1343. A corrected indictment was filed on July 28, 2006. The corrected document alleged that Defendant, from about August 2003 to March 2005, in Coles County, Illinois, knowingly devised a scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations, and promises from an individual with whom he had a fiduciary

relationship.  Defendant was a licensed real estate broker doing business as Century 21 Bear Real Estate in Charleston, Illinois.  As a broker, he was required to maintain escrow moneys separate and apart from any personal, business, or operating accounts.  Defendant maintained a personal bank account at The Bank in Charleston and a business and escrow account at First Mid-Illinois Bank and Trust in Charleston.

Around April and May of 2003 Defendant entered into a written listing agreement with "A.K." to sell real estate owned by A.K. that was located at 15009 East Country Road, 420 North, Charleston, Illinois and listed for around $199,000.  Around August 2003 A.K. left the United States to reside in Germany and gave Defendant written power of attorney as A.K.'s fiduciary to handle the sale of the 420 North property.  In August 2003 certain buyers entered into a written agreement to purchase the 420 North property from A.K. for $185,000 with a closing date scheduled in October 2003.  The buyers also agreed to purchase some personal property that A.K. had left at the residence for $10,000 and to pay $1,000 rent to reside at the 420 North property up until closing.

The closing on the 420 North property took place on October 20, 2003, and at the closing Defendant received an $11,000 commission for the sale of the property and took possession of a $170,519.08 check payable to A.K. that represented the property's proceeds of sale.  It was part of Defendant's scheme that on or about October 22, 2003, Defendant, without A.K.'s knowledge or permission, deposited the $170,519.08 check into Defendant's own personal account at The Bank, rather than into his escrow account.  Defendant's personal checking account had a balance of $467.72 at the time of deposit.  In furtherance of the scheme, Defendant represented to A.K. that the closing had not taken place because the buyers had been unable to sell their previous home.  Defendant falsely represented to A.K. that the buyers had agreed to stay at the 420 North property

until they could sell their house and A.K. agreed to let them stay and pay rent.  Over the next 90

days, Defendant spent all of A.K.'s $170,519.08 from the closing, including transferring over

$80,000 to other accounts Defendant controlled from which the money was spent, making over

$40,000 in payments on outstanding personal loans, writing $9,750 in checks to himself, and

spending over $6,000 on improvements to his personal residence.  To avoid detection, Defendant

kept forwarding rent payments to A.K.

In December 2004 Defendant told A.K. that he wanted to borrow $330,000 from him to

refinance his office and personal residence.  Defendant promised to give A.K. a mortgage on his

office to secure the loan.  Defendant falsely represented to A.K. that someone had agreed to purchase

Defendant's office property for $385,000.  Defendant knew full well that the offer had only been for

$214,000 and had been made in September 2004 and was no longer on the table in December 2004.

On December 28, 2004, Defendant sent an email to A.K. with a fraudulent mortgage.  Defendant did

not, as he claimed, possess the office property in fee simple or have title to it or possess a deed.

On March 8, 2005, Defendant sent an email to A.K. to further avoid detection of his scheme,

apologizing for misinformation and various "untruths" about the 420 North property, but falsely told

A.K. that the "net proceeds from the 420 North property were coupled with other monies and

invested in other real estate....Once the property is sold your investment with interest will be returned

to you..."  In fact, as Defendant knew full well, the net proceeds from the 420 North property had not

been invested in real estate but had been spent by him 15 months earlier.

The official charges in the July 28, 2006, corrected indictment were as follows:

On or about January 13, 2005, in Coles County, in the Central District of Illinois, and

elsewhere, Robert W. Taylor, (Also known as "Bear"), defendant herein, for the purpose of

executing the scheme did cause to be transmitted in interstate and foreign commerce, by means of

a wire communication, certain signs, signals, and sounds, that is, a wire transfer of $350,000 from

a bank account in Germany under A.K.'s control to A.K.'s personal bank account at First Mid-

Illinois Bank and Trust in Charleston, Illinois, $330,000 of which was transferred that same day to

Defendant's Century 21 Bear Real Estate account at First Mid-Illinois Bank and Trust in Charleston,

Illinois.  In violation of Title 18, United States Code, Section 1343.

Count two:

On or about March 28, 2005, in Coles County, in the Central District of Illinois and

elsewhere, Robert W. Taylor, for the purpose of executing the scheme did cause to be transmitted

in interstate and foreign commerce, by means of a wire communication, certain signs, signals, and

sounds, that is, an email message from Defendant in Charleston, Illinois to A.K. in Germany that

falsely represented the net proceeds from the sale of 420 North property were invested in real estate.

In violation of Title 18, United States Code, Section 1343.

History after Indictment

On June 8, 2006, Defendant was released on a $10,000 unsecured bond with no special

conditions after appearing for arraignment before Magistrate Judge David G. Bernthal.  Defendant

hired private counsel William Tapella.  On January 10, 2007, Tapella withdrew from representing

Defendant.  On January 25, 2007, Defendant informed the court he could retain counsel by the end

of February.  On February 28, 2007, Defendant told the court he had retained counsel.  On April 10,

2007, Defendant appeared before Judge Bernthal and said he would represent himself.  An arrest

warrant for Defendant was also issued that day.  On April 17, 2007, at Defendant's request, the

Federal Defenders Office was appointed to represent him.  On April 19, 2007, following a hearing,

Judge Bernthal revoked Defendant's bond.  On July 12, 2007, a superseding indictment was filed containing a third count that Defendant allegedly committed while out on bond for the first two counts.

Third Count in Superseding Indictment

On March 17, 2005, Defendant accepted $7,500 in earnest money from MVC Land Development to be held in escrow by Defendant pursuant to a real estate contract in which MVC was to purchase real estate from a seller whom Defendant represented.  Defendant did not maintain the $7,500 in an escrow account, but spent it for his own purposes without the permission of the principals to the real estate transaction.  When the transaction was terminated, MVC requested in writing on March 7, 2006, that Defendant return the $7,500 in earnest money under the real estate contract.  Defendant did not respond to the letter, so a MVC representative contacted him by telephone.  Defendant falsely told him that the seller was not happy that the transaction was terminated and that the seller may not be willing to relinquish the $7,500 earnest money because the seller had made improvements to the property pursuant to the real estate contract.  In fact, the seller had not made improvements to the property, nor was the seller unwilling to relinquish the $7,500 earnest money.  Defendant never returned the money to MVC.

Beginning in 2006, Defendant acted as the real estate agent for the purchase of several tracts of real estate in Charleston, Illinois, by 12 CRAEB, LLC ("the Purchaser"), an entity created by Gemini Development Group specifically for the purchase of real estate in Charleston.  In April 2006 Defendant began accepting earnest money from the Purchaser to hold in escrow.

In January 2007, while the real estate transaction was still pending, Defendant requested additional earnest money from the Purchaser by falsely representing that he was being investigated

by the licensing agency for real estate agents, the Illinois Department of Financial and Professional Regulation (DFPR), because the Purchaser had not made timely earnest money deposits. In support of his representation, Defendant provided Purchaser with a letter he had fraudulently created that was purportedly from the DFPR and stated they were investigating Defendant based on a failure for timely earnest money deposits to be made regarding two of the subject properties. As a result, Purchaser provided Defendant with an additional $33,000 in earnest money.

The total earnest money provided to Defendant by the Purchaser to be held in escrow was $103,000. Defendant did not maintain the $103,000 in an escrow account, but spent $100,000 of it for his own purposes without the permission of the principals to the real estate transaction. Defendant was to transfer the earnest money to Land America Title, Chicago, Illinois, on March 9, 2007, as part of the real estate transaction. On that date, Defendant transferred only $3,000. Defendant falsely told the Purchaser that he was having issues with First-Mid Bank and Trust in Charleston, Illinois in getting the additional $100,000 wired. On March 12, 2007, Defendant went to the Purchaser's office and falsely told representatives of the Purchaser that he could not provide the $100,000 earnest money because of issues with First Mid-Bank and Trust in Charleston. In fact, Defendant no longer had the earnest money, which he had spent for his own personal benefit. Defendant never provided the Purchaser or the title company with the $100,000 earnest money.

The charge read as:

On or about January 31, 2007, in Coles County, in the Central District of Illinois, and elsewhere, Robert W. Taylor defendant herein, for the purpose of executing the scheme did knowingly cause to be deposited to be sent and delivered by a commercial interstate carrier and cause to be delivered by such carrier according to the direction thereon a parcel containing an earnest

money check payable to Century 21 Bear Real Estate, which parcel was sent by UPS from Gemini Companies, Inc., and delivered by the UPS to the defendant at Century 21 Bear Real Estate.  In violation of Title 18, United States Code, Section 1343.

Furthermore, Defendant committed this offense at a time while he was released pursuant to an order dated June 8, 2006, from the United States District Court for the Central District of Illinois, case No. 06-20030, which order notified the defendant of the potential effect of committing an offense while on pretrial release.  In violation of Title 18, United States Code, Section 3147.

Defendant's Guilty Plea

On February 19, 2008, Defendant appeared before Judge Bernthal and entered a plea of guilty to counts 2 and 3 of the superseding indictment.  The court found the plea knowing and voluntary. On March 25, 2008, this court entered an Order (#32) adopting the Report and Recommendations of Judge Bernthal accepting Defendant's plea of guilty to counts 2 and 3.  On April 2, 2009, Defendant appeared in court with his appointed counsel John Taylor and William Zukosky. Defendant made an oral motion to dismiss Taylor and retain Zukosky as standby counsel.  The court granted Defendant's motion to proceed pro se and on April 24, 2009, allowed Zukosky to be standby counsel.

### DEFENDANT'S CURRENT MOTIONS

On June 1, 2009, Defendant filed three motions: A Motion to Withdraw Guilty Plea and Void Plea Agreement (#50), A Motion for Revocation or Amendment of the Revocation Order (#51), and a Motion for Discovery (#52).  On June 19, 2009, the government filed its Responses to all three motions (#56-58).  Each motion will be dealt with in turn.

### I. **Motion to Withdraw Guilty Plea**

_____**Defendant's Motion**

In his Motion for Leave to Withdraw Plea of Guilty and Void Plea Agreement (#50) Defendant moves the court, per Federal Rule of Civil Procedure 11(d)(2)(B) to grant him leave to withdraw his guilty plea "for fair and just reason" prior to sentencing.  In support of his motion, Defendant filed a 14-page affidavit, explaining in great detail his problems with assigned counsel Assistant Federal Defender John Taylor and why he would not have plead guilty but for the bad and erroneous advice given him by his counsel.  In support of his contention, Defendant states the following:

On February 12, 2008, during telephone discussions concerning a proposed plea agreement, Taylor performed deficiently in erroneously advising Defendant that: (1) he had thoroughly analyzed the case; (2) he had concluded after said analysis that it would be in Defendant's best interests to enter a plea agreement as opposed to going to trial and that if he did proceed to trial and was convicted, that Chief Judge McCuskey would give Defendant a leadership enhancement of 4 points and that if Defendant took the stand and the court thought he lied, he would give Defendant an additional 2 points for obstruction. This would raise Defendant's offense level to 34 and his sentence would become a minimum 12.5 to 13 years in prison.  Based on this advice, Defendant decided to enter a plea agreement.

On February 18, 2008, after receiving a new plea agreement from the government, Defendant informed Assistant Federal Defender William C. Zukosky that he did not agree with the new plea proposal and Zukosky asked Defendant to do some "homework."  The next day, Defendant met with Zukosky and Taylor and tried to read them the revisions he had made to the proposed plea, but Taylor interrupted him and said the government would not accept those changes.  Taylor encouraged

-8-

Defendant to accept the plea as written.  Defendant asked counsel to remove himself, but Taylor

refused.  After working with Zukosky, Defendant signed a "revised plea agreement."  However, due

to a conflict in the court's schedule, Defendant's change of plea hearing was moved to 3:15 p.m. that

day, February 19, 2008, before Magistrate Judge David G. Bernthal.  Defendant then plead guilty

to counts 2 and 3 of the superseding indictment.  Judge Bernthal ordered a Pre-Sentence Report and

set a sentencing hearing for May 30, 2008.

Defendant claims that sometime late in February 2008, concerned about the events leading

up to his signing of the plea agreement, he consulted the Sentencing Guidelines and became

convinced that the aggravating role "leadership enhancements" of § 3B1.1 of the guidelines did not

apply to his case.  On March 10, 2008, Defendant informed Taylor that he desired to withdraw his

plea, because he was never subjected to "any points" for leadership enhancement and that he would

not have faced a minimum 12.5 to 13 year sentence.  Taylor, however, informed Defendant that it

was too late to withdraw as the court had already accepted his plea.  Defendant told Taylor there

remained two contested issues in the plea agreement, relating to total loss and sophisticated means

and Taylor assured Defendant that once the PSR draft was completed, he would contact Defendant

to arrange a time to meet and discuss the contested issues.

On April 23, 2008, Taylor was not able to meet with Defendant but asked him to go over the

PSR copy he had received for any objections.  Over the next month Taylor and Defendant continued

to communicate concerning sentencing arrangements and PSR objections.  On May 28, 2008,

Defendant met with counsel and again asked him to file a motion to withdraw guilty plea, to which

counsel responded that it was not possible but encouraged Defendant to ask the judge about

withdrawing his plea in open court.  Defendant appeared in court and was "unsuccessful" in

discussing withdrawing the plea with the court.  Defendant again asked Taylor to remove himself as counsel, to which Taylor refused, stating that Judge McCuskey appointed him and if the judge so desired, could remove him.  Upon a review of the docket, Defendant learned that the court had accepted his plea (adopting the plea entered before Judge Bernthal) on March 25, 2008, and "was shocked to learn that [he] could have withdrawn his plea if counsel would have filed a motion after Defendant asked him to on March 10, 2008."

On June 27, 2008, Defendant met with Taylor for two hours and twenty minutes, with Taylor reading discovery material for over two hours.  On October 7, 2008, Defendant sent Taylor another letter requesting a motion be filed to withdraw his plea.  A new sentencing date was set for February 13, 2009, with probation ordered to complete a Revised PSR prior to a telephone status conference set for January 12, 2009.  Due to delays with the PSR and the many things happening in Defendant's life (such as his recent divorce and transfer to Sullivan, Illinois) Defendant was okay with another continuance.  During a telephone status conference, a new sentencing date of June 4, 2009, was set.

On March 2, 2009, Taylor and Zukosky traveled to Sullivan to meet with Defendant.  Taylor sat through a PSR interview between Defendant and Federal Probation Officer Donna Brown.  Zukosky and Taylor then met with Defendant and Defendant shared with Zukosky all his concerns about Taylor and Taylor's erroneous advice about "leadership points" in February 2008 that caused Defendant to plead guilty.  Taylor responded that he never said Defendant would receive a 4 point leadership enhancement, but that Defendant would receive a 2 point leadership enhancement and a 2 point obstruction of justice enhancement and that Defendant would receive a maximum 12.5 to 13 year sentence, not a minimum 12.5 to 13 year sentence.  Taylor also reminded Defendant of the maximum statutory limits for each count Defendant faced and the court could sentence Defendant

above the guideline range.  Taylor again encouraged Defendant to share his concerns with the court.

On April 2, 2009, at a hearing, Defendant shared his concerns about proceeding with Taylor with the court and made an oral motion to proceed pro se with a court-appointed standby attorney. The court approved the motion and removed Taylor as counsel.  On April 24, 2009, Zukosky was appointed standby counsel and Defendant informed the court of his intent to file a motion to withdraw his guilty plea.

Defendant then concluded his affidavit maintaining his innocence as to counts 1 and 3. Defendant claims that Taylor's advice on February 12, 2008, dramatically altered the choice he faced as a defendant, from 37 to 60 months with the plea or 78 to 97 months at trial, to instead 37 to 60 months with a plea and a possible 151 to 188 months following conviction at trial.  Defendant charges that Taylor failed to engage in a good faith analysis and gave bad advice concerning the likely sentence Defendant would receive and that failure to provide good advice stems from Taylor's failure to review guidelines, statutes, or case law that Taylor knew to be relevant, in violation of Moore v. Bryant, 348 F.3d 238 (7th Cir. 2003).

Defendant then summed up his arguments thusly:

(1) Taylor performed deficiently in erroneously advising Defendant without reading guidelines, and all other relevant information.  Taylor chose to provide advice about leadership enhancement points, but did not make good faith inquiry to discover a leadership enhancement does not apply to the case.

(2) Defendant would not have changed his plea if it were not for Taylor's erroneous advice.

(3) Defendant was prejudiced by Taylor's error that he would receive 37 to 60 months if he plead, as opposed to 151-188 months if he went to trial, and this advice directly impacted his

decision to plead guilty.

(4) Defendant had right to withdraw plea for any reason or no reason under Rule 11(d)(1) of the Federal Rules of Criminal Procedure if counsel would have filed a motion when requested to do so by Defendant on March 10, 2008.

(5) Defendant requested counsel to file a motion to withdraw his plea numerous times over a 12 months period from March 10, 2008 to March 30, 2009.

### The Government's Response

The government filed its Response (#56) on June 19, 2009. In its Response, the government points out that Defendant plead guilty in a lengthy, detailed plea agreement that set forth in great detail Defendant's criminal conduct. Defendant also stated that he had discussed the plea fully with his attorney and was satisfied with the legal services provided. Judge Bernthal conducted a thorough Rule 11 plea colloquy and Defendant acknowledged under oath that he was guilty of the offenses to which he was pleading. It was not until April 24, 2009, that Defendant for the first time, despite many prior opportunities to do so when appearing before the court whether represented or pro se, informed the court of his desire to withdraw his plea of guilty.

The government argues that Defendant has not presented a fair and just reason to withdraw the plea of guilty he entered under oath. To support this argument, the government advances three main points: (1) Defendant's allegations on their face do not demonstrate bad advice; (2) Defendant's allegations do not demonstrate deficient performance; and (3) Defendant cannot show that he would have gone to trial absent his counsel's sentencing advice.

### The Court's Ruling

In regard to withdrawing a guilty plea, the Federal Rules of Criminal Procedure state:

"(d) Withdrawing a Guilty or Nolo Contendere Plea.  A defendant may withdraw a plea of guilty or nolo contendere:

(1) before the court accepts the plea, for any reason or no reason; or

(2) after the court accepts the plea, but before it imposes sentence if:

(A) the court rejects a plea agreement under Rule 11(c)(5); or

(B) the defendant can show a fair and just reason for requesting that withdrawal."

Fed. R. Crim. P. 11(d).

In the instant case, Defendant is proceeding under Rule 11(d)(2)(B), contending that he can show a fair and just reason for requesting withdrawal of his plea agreement.  A plea of guilty is a grave and solemn act and the entry of such a plea is not an empty ceremony.  United States v. Loutos, 383 F.3d 615, 619 (7th Cir. 2004).  The statements made in court to a federal judge are not "trifles" that the defendant may elect to disregard, but rather the plea admits, in legal effect, the facts as charged.  Loutos, 383 F.3d at 619.

The Seventh Circuit has observed that a defendant does not have an absolute right to withdraw a plea before sentencing, although the court may allow him to do so if he has a fair and just reason for requesting the withdrawal.  United States v. Chavers, 515 F.3d 722, 724 (7th Cir. 2008). However, because a defendant's statements at the plea colloquy are presumed to be true, the defendant bears a heavy burden of persuasion in showing that such a fair and just reason exists. Chavers, 515 F.3d at 724.  A defendant faces an "uphill battle" when seeking to withdraw a guilty plea following a thorough plea colloquy.  Chavers, 515 F.3d at 724.

Defendant has argued that counsel was ineffective for giving him erroneous advice and that

-13-

without such advice, he would not have plead guilty.  A guilty plea can be rendered involuntary via ineffective assistance of counsel, and thus is a valid basis for withdrawal of such a plea.  United States v. Lundy, 484 F.3d 480, 484 (7th Cir. 2007).  In order to demonstrate ineffective assistance in this context, a defendant must show that (1) counsel's performance was objectively unreasonable and (2) that but for counsel's errors, defendant would not have plead guilty.  Lundy, 484 F.3d at 484. When determining whether a plea was entered voluntarily, courts look at the totality of the circumstances.  Lundy, 484 F.3d at 484.

Assuming, *arguendo*, that Taylor did tell Defendant that he would be subject to a four-level increase for his role in the offense and that under the facts such advice was incorrect, the court agrees with the government that such advice does not rise to the level of deficient performance under the prevailing legal standards.  The Seventh Circuit has written that [w]hen assessing counsel's performance, we have noted that a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty.  United States v. Bethel, 458 F.3d 711, 716 (7th Cir. 2006).  Further,

"[b]ecause many questions about the facts and how a court or jury will apply the law to those facts cannot be answered by counsel with certitude, "[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on the given facts.'" Bethel, 458 F.3d at 716, citing McMann v. Richardson, 397 U.S. 759, 770 (1970).

The Seventh Circuit went on to say "[a]lthough a gross mischaracterization of the sentencing

-14-

consequences of a plea may strongly indicate deficient performance, it is not proof of deficiency." Bethel, 458 F.3d at 716. "The salient question is whether counsel undertook a good-faith effort to determine the applicable facts and estimate a sentence. An inaccurate prediction of a sentence alone is not enough to meet the standard." Bethel, 458 F.3d at 716.

The court agrees with the government that Defendant has provided no evidence that his counsel failed to attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty. See Bethel, 458 F.3d at 716. Rather, even Defendant's own affidavit shows that Taylor diligently met with Defendant numerous times to go over the case, plea offer, and materials. All Defendant has cited to the contrary is his insinuation that Taylor, when meeting with Defendant on June 27, 2008, was reading discovery materials for the first time when Taylor sat with Defendant and read discovery materials for over two hours. Defendant even says that Taylor did tell him prior to February 12, 2008, that he had thoroughly analyzed the case. Defendant provides no evidence that Taylor was lying or was unfamiliar with the facts of the case before Defendant entered his plea on February 19, 2008. Again, Defendant bears a heavy burden of persuasion in withdrawing his guilty plea, especially following a lengthy plea colloquy. See Chavers, 515 F.3d at 724. Defendant has provided no evidence that Taylor engaged in anything but a good faith effort to determine the applicable facts and estimate a sentence. If anything, Defendant has shown that Taylor made an inaccurate prediction of his sentence, but that alone is not enough to meet the standard. See Bethel, 458 F.3d at 716. Also, during the plea colloquy before Judge Bernthal on February 19, 2008, Defendant said he had enough time to discuss his case with both Taylor and Zukosky and that he was satisfied with their representation. "'A district court is generally justified in discrediting the

proffered reasons for the motion to withdraw and holding the defendant to his admissions during the plea colloquy.'" Lundy, 484 F.3d at 484, citing United States v. Pike, 211 F.3d 385, 389 (7th Cir. 2000). The court cannot say that Taylor's performance was objectively unreasonable.[1]

Further, Defendant has not shown that he would have gone to trial but for counsel's erroneous advice. A mere allegation by defendant that he would have insisted on going to trial is not sufficient to establish prejudice. Bethel, 458 F.3d at 718. Rather, a defendant must show that his lawyer's deficiency was a decisive factor in his decision to plead guilty. United States v. Cieslowski, 410 F.3d 353, 358-59 (7th Cir. 2005). To make such a showing, a defendant must present objective evidence that a reasonable probability exists that he would have taken that step. Cieslowski, 410 F.3d at 359. Actual innocence is a ground for withdrawing a guilty plea, but "bare protestations of innocence are insufficient to withdraw a guilty plea, particularly after a knowing and voluntary plea made in a thorough Rule 11 colloquy." Chavers, 515 F.3d at 725. Defendant must produce some credible evidence of his innocence. Chavers, 515 F.3d at 725.

Here, Defendant pled guilty in open court, after a thorough Rule 11 colloquy with Judge Bernthal, to counts 2 and 3 of the indictment. He admitted under oath that his plea was not rushed or coerced and that he was indeed guilty of the charges he was pleading to and had committed the illegal conduct as alleged in the indictment. Further, Defendant has provided no "credible evidence of his innocence." See Chavers, 515 F.3d at 725. Rather, again, all Defendant asserts here is a mere allegation that he would not have pled guilty but for the erroneous advice. Also, Defendant chose

---

[1]Defendant has cited to Moore v. Bryant, 348 F.3d 238 (7th Cir. 2003) in support of his motion, but that case is distinguishable, as there the counsel admitted that he did not have relevant statutes when providing advice and never analyzed relevant case law. Here, Defendant has not even made any specific allegations about what Taylor failed to do, just that the advice was erroneous and not done "in good faith."

this late date, just before sentencing, to file his motion to withdraw.  Defendant has had numerous court appearances and contact with his attorneys in the more than a year since his change of plea hearing, yet waited until late April 2009 to inform the court of his desire to file a motion to withdraw his plea.  Defendant has also been actively preparing for his sentencing hearing, meeting with standby counsel and filing numerous objections to the PSR.  In his own affidavit, Defendant even admits that on May 28, 2008, he asked Taylor to file a motion to withdraw, Taylor said it was not possible, and then "encouraged [Defendant] to ask the judge about withdrawing his plea in open court."  Yet Defendant still waited almost a year from that date to inform the court of his desire to withdraw his plea.  The court cannot say that Defendant has carried his heavy burden of persuasion in showing that but for counsel's erroneous advice, he would have gone to trial.

For the above reasons, Defendant's Motion to Withdraw Guilty Plea and Void Plea Agreement (#50) is DENIED.

## II.  Motion for Revocation or Amendment of the Detention Order

### Defendant's Motion

In his Motion for Revocation or Amendment of Detention Order (#51) Defendant moves the court pursuant to 18 U.S.C. § 3145(b) to revoke or amend the detention order filed by Judge Bernthal on April 25, 2007.  In support of his motion, Defendant argues that he is (1) not a danger to the community or anyone else; (2) the amount of time served in incarceration (25.5 months at the date of filing and 27 months as of July 9, 2009) meets the need of the sentence reflecting the seriousness of the offense and promotes respect for the law and provides just punishment for the offenses; and (3) Defendant desires to be released to prepare his defense in order to bring the case to resolution and finality in a more timely and effective manner.  Defendant notes that Judge Bernthal ordered him

detained because he was a possible danger to any other person or the community as the government alleged he committed additional crimes as a real estate broker while on bond. However, Defendant now says that as he is no longer a licensed real estate broker nor will he be in the future, the danger of him committing future acts of fraud are none existent.

**Government's Response**

The government points out that, while Defendant was on bond for counts 1 and 2, the government filed a motion to revoke bond on April 10, 2007, because Defendant had defrauded another real estate client of $103,000. On February 19, 2008, Defendant pleaded guilty to counts 2 and 3 of the superseding indictment. The government points out that no evidentiary hearing is required, as Defendant has only requested the court review the previous detention order of Judge Bernthal, not that the hearing be reopened based on new information pursuant to 18 U.S.C. § 3142(f).

The government makes three main arguments against Defendant's release: (1) 18 U.S.C. § 3148 required detention based on the previous findings of the court and those findings, which the court at the time found by probable cause, have now been admitted by Defendant stipulated to beyond a reasonable doubt in the plea agreement; (2) Defendant's assertion that he does not now pose a danger is self-serving and legally insufficient because (a) he is presumed to pose a danger under § 3148(b) because he committed a federal offense while on release and Defendant has offered no evidence to rebut that presumption and (b) the detention order was not based on Defendant's danger to the community, but on alternate grounds that he was unlikely to abide by conditions of release; and (3) now that Defendant has pleaded guilty to two federal felonies, he faces a higher standard to be released pending sentencing than he faced pretrial.

**The Court's Ruling**

Defendant seeks relief pursuant to 18 U.S.C. § 3145(b), which states:

> "Review of a detention order.- If a person ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.  The motion shall be determined promptly."  18 U.S.C. § 3145(b).

As pointed out by the government in its Response, Defendant has asked the court to review ("revoke or amend") the detention order issued by Judge Bernthal on April 25, 2007, not reopen the hearing due to new evidence pursuant to 18 U.S.C. § 3142(f).  A district court can read the testimony taken by the magistrate judge or receive new testimony.  <u>United States v. Torres</u>, 929 F.2d 291, 292 (7th Cir. 1991).

Defendant's bond was revoked pursuant to 18 U.S.C. § 3148(b), which allows revocation if the court finds that there is:

> "(A) probable cause to believe that the person has committed a Federal, State or local crime while on release; or
>
> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that-
>
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will

not flee or pose a danger to the safety of any other person or the

community; or

(B) the person is unlikely to abide by any condition or combination of

conditions of release." 18 U.S.C. § 3148(b).

Judge Bernthal found just that at a hearing on April 19, 2007, revoking Defendant's bond and

remanding him to the custody of the U.S. Marshal's Service. The April 19, 2007, proceeding was

recorded via audio tape and this court has had an opportunity to fully review the audio from that

hearing. The testimony presented by government witness, David Young, a 17-year veteran Special

Agent with the Federal Bureau of Investigation, mirrored the allegations detailed in Count 3 of the

superseding indictment. The government argued mainly that Defendant, based on his conduct on

bond, could not and would not abide by the conditions of his release and had "brazenly" committed

further fraud while out on bond. Judge Bernthal found Defendant was unlikely to abide by the

conditions of his release and found that the statute, based on the court's findings, mandated

revocation of bond.

In a written Order (#23) dated April 25, 2007, Judge Bernthal wrote:

"Based on the evidence, the Court found probable cause to believe that

Defendant had violated federal and state statutes while on release. The Court further

found that this Defendant is unlikely to abide by any condition or combination of

conditions of release. Specifically, there is probable cause to believe that this

Defendant is engaging in criminal conduct that is remarkably similar to the conduct

alleged in the Indictment. The Court cannot trust an individual on bond if he

continues to engage in the type of conduct that lead to the charge in the first place."

-20-

The court agrees with the arguments advanced by the government and will not revoke Judge Bernthal's detention order.  Defendant has advanced three grounds in support of his motion for revocation of the detention order: (1) he does not pose a danger to any other person or the community; (2) the amount of time he has already been detained meets the needs of sentencing; and (3) he wants to be released to prepare his defense.  None of these reasons justify revoking Judge Bernthal's detention order.  With regard to the first ground, Defendant has argued that since his real estate license is revoked, his danger to the community is lessened as he is unlikely to commit further fraud.  That argument is meritless, however, as the main basis for the order of detention was inability to comply with conditions of release.  Also, Defendant is charged with (and has plead to) crimes involving the commission of fraud.  Defendant has already committed fraud once while out on bond in this case, there is nothing to suggest that simply not having his real estate license would prevent him from violating the terms of his release.  Defendant's second claim regarding time served is meritless, as no definite sentence has been set yet in this case.  His third ground is similarly without merit, as this court has denied his motion to withdraw guilty plea and there is no defense to prepare.

The government presented detailed testimony at the hearing of Defendant's commission of fraud while on bond, a fraud that was very similar to the fraud charged in the original indictment. In fact, the fraud alleged at the hearing later formed the basis for Count 3 of the Grand Jury's superseding Indictment.  Further, Defendant even plead guilty to Count 3 in the change of plea hearing on February 19, 2008.  The court, in this order, has affirmed that guilty plea.  The court sees no reason, based on a review of the record and Defendant's motion, to revoke Judge Bernthal's detention order.  Defendant's Motion for Revocation or Amendment of Detention Order (#51) is DENIED.

### III.  Motion for Discovery

### Defendant's Motion

Defendant moves the court, per the Federal Rule of Criminal Procedure 16(a)(1)(E)(i) to order the government to present to Defendant a January 27, 2007, email sent by Defendant to Mike Glenn, Jr., of Gemini Companies.  Defendant claims the government has provided the attachment and used the attachment as evidence at Defendant's bond hearing, but has not provided the actual email, which Defendant, through John Taylor, requested in February 2008.

### The Government's Response

The government argues that Rule 16 does not support Defendant's request.  The requested email is not within the possession, control, or custody of the government.  The Federal Bureau of Investigation did not receive a copy of the email itself or any other additional information allegedly contained in the email.  The email Defendant seeks contained as an attachment a false document that the Defendant represented came from the Illinois Department of Financial and Professional Regulation (IDFPR), but was actually created by Defendant.  The FBI received a copy of the fraudulent IDFPR letter from Gemini.  Thus, any such email contents, if they exist and have not been deleted, are in the possession of Gemini as the recipient, Defendant as the sender, or any number of email service providers.  They are not in the government's possession.  Second, the rule cited by Defendant provides for inspection and copying of any item that is material to preparing a defense. Defendant has already plead guilty to count 3, to which the email relates, thus it is difficult to see how the email could be material to preparing a defense to a charge Defendant has already admitted under oath that he committed.  Defendant has not even alleged the email is material.

### The Court's Ruling

The Federal Rules of Criminal Procedure state:

"Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and :

(i) the item is material to preparing the defense..." Fed. R. Crim. P. 16(a)(1)(E)(i).

The court agrees with the government position. The government does not have the requested original email in its possession. Further, the request by Defendant appears to pertain to preparing a defense to his conviction. Defendant has already pleaded guilty in this case and the court has denied Defendant's motion to withdraw his plea. Third, as pointed out by the government, Defendant has not even alleged that the requested information is material, nor has he articulated in his motion any facts or argument that would support such a request. Motion for Discovery (#52) is DENIED.

-23-

IT IS THEREFORE ORDERED:

(1) Defendant's Motion to Withdraw Guilty Plea and Vacate Plea Agreement (#50) is DENIED.

(2) Defendant's Motion for Revocation or Amendment of Detention Order (#51) is DENIED.

(3) Defendant's Motion for Discovery (#52) is DENIED.

(4) This case remains set for a hearing in Courtroom A at 11:00 am on July 9, 2009.

ENTERED this 8th day of July, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE